UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOHN RUBEO,

Defendant.

No. 12-cr-260 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

On June 29, 2018, the Court sentenced Defendant John Rubeo to time served (approximately 15 months) and three years of supervised release following his guilty plea to racketeering conspiracy, assault in aid of racketeering, drug trafficking conspiracy, operating illegal gambling businesses, conspiracy to transport stolen property, and Hobbs Act robbery in connection with his involvement in the Genovese Organized Crime Family of La Cosa Nostra. One of the terms and conditions of Rubeo's supervised release is that he not associate with convicted felons without the express permission of his probation officer. (Doc. No. 64 at 5 ("If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer").)

The Court has recently learned that Rubeo participated in a podcast dedicated to organized crime subjects in which he was interviewed by other previously convicted felons. This is troubling in two respects. First, Rubeo did not advise his probation officer of his participation in this podcast until after the fact, and even then did not disclose the details of when he first spoke with or associated with the individuals, including convicted felons, involved in the podcast. It thus appears that Rubeo may have violated the conditions of his supervised release.

Second, a newspaper account of the podcast interview indicates that Rubeo admitted to "framing a septuagenarian mobster" named Anthony Zinzi "for a 2011 arson," and suggests that Zinzi was convicted on Rubeo's "say-so."  Larry McShane, *Mob informant against Philly boss "Skinny Joey" Merlino admits destroying evidence, ignoring deal with prosecutors*, New York Daily News, Sept. 26, 2020.   In reality, Zinzi pleaded guilty to conspiracy to commit that arson, along with additional counts for extortion and illegal gambling.  (*See* No. 16-cr-522 (RJS), Doc. No. 802 at 17, 38–39.)  Moreover, certain of Zinzi's statements from his plea and sentencing are worth recounting here, as they contradict the Daily News's suggestion that Zinzi was convicted on anyone's "say-so" but his own.  Here's how Zinzi described his participation in the crime during the guilty plea proceeding:

> THE DEFENDANT: Somebody was running a gambling operation in our territory . . . and I was walking down the street with somebody else and they said they were going to burn the car.
>
> THE COURT: The person whose car was going to be burned . . . was competing with your gambling operation?
>
> THE DEFENDANT: Absolutely.
>
> THE COURT: In order to discourage [him] from doing that, the plan was to burn [his] car?
>
> THE DEFENDANT: Yes.

(*Id.* at 38; *see also id.* at 39.)   Later, in describing the evidence it would introduce at trial, the government proffered that Zinzi "suggested that coconspirators set the car [of the rival gambling club operator] on fire."  (*Id.* at 43.)  When the Court asked Zinzi if he disagreed with any of the government's statement, Zinzi responded, "I agree with it 100 percent."  (*Id.*)  Given these statements, the Court accepted Zinzi's guilty plea as knowing, intelligent, and voluntary.  (*Id.* at 44.)

At sentencing, consistent with Zinzi's statements at the plea hearing, Zinzi's lawyer sought to emphasize that Zinzi's "only role . . . in th[e] conspiracy to commit arson" was to "suggest it." (No. 16-cr-522 (RJS), Doc. No. 1462 at 22.)  In defense counsel's words, Zinzi "thr[ew] out, well, why don't you burn [the rival's] car," but "had no authority to tell anyone to do anything" and "wasn't giving . . . an order."  (*Id.*) While counsel underscored that Zinzi "didn't even know [the individuals who carried out the arson] were going to follow through on it until they did," at no point did he or Zinzi suggest that Zinzi was not guilty of the offense or that he had been framed. (*Id.* (acknowledging that Zinzi's "connection . . . to [the arson was] enough to make him criminally liable").)  And when the Court sentenced Zinzi to four years, his lawyer called it "a very appropriate sentence."  (*Id.* at 46.)

Having now listened to the podcast interview, the Court notes that Rubeo's statements during the podcast are largely consistent with Zinzi's statements at his plea and sentencing, and that the Daily News appears to have misconstrued Rubeo's account during the interview. Nevertheless, the Court takes seriously allegations that a defendant was "framed."

Accordingly, IT IS HEREBY ORDERED THAT Rubeo and his attorney, Louis V. Fasulo, shall appear on October 16, 2020 at 10:00 a.m. for a status conference regarding whether Rubeo (1) violated the conditions of his supervised release by associating with known felons without the knowledge and permission of his probation officer, and (2) made false statements about Zinzi's role in the arson.  If Rubeo prefers to proceed remotely by video or teleconference via Skype for Business in light of the COVID-19 pandemic, he shall docket a letter informing the Court of that preference no later than October 9, 2020.  Once the Court has determined whether the proceeding

will take place in-person or remotely, it will issue an order in due course with additional details concerning the logistics of the conference.

SO ORDERED.

Dated:     October 5, 2020
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

4